Filed 3/6/25  In re J.G. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.G. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.M.,<br><br>Defendant and Appellant. | F088681<br><br>(Super. Ct. Nos. 21CEJ300430-1 & 21CEJ300430-2)<br><br>**OPINION** |

## THE COURT\*

APPEAL from an order of the Superior Court of Fresno County.  Amythest Freeman, Judge.

Roshni Mehta, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Meehan, Acting P. J., Snauffer, J. and DeSantos, J.

In this juvenile dependency case, S.M. (mother) appeals from the juvenile court's order terminating her parental rights as to her minor children, J.G. and K.B. (Welf & Inst. Code,[1] § 366.26). After reviewing the record, mother's court-appointed counsel informed this court she could find no arguable issues to raise on mother's behalf. This court granted mother leave to personally file a letter brief setting forth a good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.) Mother filed a letter brief but failed to make such a showing. Accordingly, we dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

This family consists of mother; minors J.G. and K.B; Kevin, mother's husband and presumed father of K.B., later elevated to presumed father of J.G.; and J.L.G., biological father, later elevated to presumed father, of J.G.[2]

In December 2021, the Fresno County Department of Social Services (department) filed a petition on behalf of then 22-month-old J.G. and newborn K.B. alleging they came within the juvenile court's jurisdiction under section 300, subdivision (b)(1) due to mother and Kevin's inability to provide adequate care due to substance abuse, particularly cocaine. The children were ordered detained from their parents on December 29, 2021, and were placed together in a mentor placement.

Following the detention hearing, mother informed the social worker that she and Kevin were planning on moving to North Carolina; they had to be out of their home by February 2022, and would like the children moved to North Carolina. Mother admitted to past domestic violence but denied it was still a problem. She stated she used cocaine for the first time before K.B. was born. She further disclosed she was diagnosed with

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] Neither father has filed an appeal in this case, and we omit facts pertaining to them, except as they appear pertinent to the claims mother makes in her letter brief.

bipolar disorder and anxiety. Kevin denied any need for department intervention. Mother began visiting with the children, but Kevin declined visits because he stated he was getting ready for the move to North Carolina. Mother was observed to be affectionate with the children, and no concerns were noted.

Mother and Kevin's voluntary case plan consisted of parenting classes, substance abuse evaluations and recommended treatment, mental health evaluations and recommended treatment, domestic violence inventories and recommended treatment, and random drug testing. Kevin did not participate in any voluntary services. Mother began parenting classes and participated in some random drug testing, which resulted in three negative tests, two positive for creatinine, one missed test, and three positive for THC. She was thereafter dropped due to consecutive no shows because she had traveled to Arkansas to spend time with an ill family member. Mother later participated in her voluntary mental health assessment and was recommended services but did not start them as the clinician was unable to get a hold of her and was discharged without having attended services. She also completed her domestic violence inventory and was recommended to participate in the Child Abuse Intervention Program, but she did not enroll.

The jurisdiction hearing was conducted on May 2, 2022. It had been continued due to ICWA inquiry and notice issues. The juvenile court found the allegations true and that both children were described by section 300, subdivision (b). The matter was continued for disposition because of defective notice.

Following the jurisdictional hearing, mother completed her voluntary substance abuse assessment and was recommended to participate in three to four groups per week but was dropped shortly after enrolling because she had multiple no shows. Mother participated in random drug testing between April 2022 and May 2022 and tested positive for marijuana and cocaine but was thereafter dropped due to consecutive no shows. Mother completed her parenting classes. In June 2022, a domestic dispute between

3.

mother and Kevin involving a firearm occurred, and Kevin was arrested due to having two active warrants. He was found in possession of possible ketamine, marijuana, and dried mushrooms.

Mother and Kevin did not visit with the children in May 2022 but had a combination of in-person and virtual visits in July and August. However, several were cancelled or ended early at the parents' request or because they did not complete the one-hour sign-in requirement. The department attempted to engage mother in her services several times throughout July and August but was unsuccessful.

In September 2022, mother and Kevin moved to North Carolina. They began having solely virtual visits with the children. On September 26, 2022, mother asked to be connected with services through Onslow County in North Carolina.

Prior to the disposition hearing, the department recommended mother be denied reunification services pursuant to section 361.5, subdivision (b)(12) because she had been convicted of robbery, a violent felony. The department argued services were not in the best interest of the children.

The disposition hearing was conducted on October 24, 2022. It had been continued from July 2022 due to connectivity issues with remote appearances. The children were adjudged dependents of the court and were ordered removed from the parents' custody. The juvenile court found mother had been convicted of a violent felony but that reunification was in the children's best interest. The court ordered reunification services for all parents, including parenting classes, domestic violence evaluations and recommended treatment, substance abuse assessments and recommended treatment, mental health evaluations and recommended treatment, and random drug testing.

The six-month status review hearing was continued several times for various reasons, including late reports and illnesses. Throughout the reunification period, the department consistently recommended the parents' reunification services be terminated and a section 366.26 hearing be set.

As for mother's case plan, the only component she completed in Fresno County was her parenting class. The social worker detailed the efforts she took to get mother connected with services in Onslow County, North Carolina, including directly contacting providers, and encouraging the parents to participate in the services available. Mother expressed difficulty paying for services, and the social worker advised her several times that the department would arrange payment for services or reimburse the parents for services they paid for up front. In Onslow County, mother participated in another substance abuse assessment and was not recommended treatment because she had reported she had only used drugs once. She also participated in a mental health assessment and was recommended therapy twice per week. Later, she completed another domestic violence assessment and was not recommended treatment, as she did not disclose any domestic violence. Kevin did not complete any of his case plan components.

In August 2023, the social worker contacted the Onslow County Department of Social Services Child Welfare regarding possible transfer of the case. The social worker was informed Onslow County does not generally accept cases from other states, and that the issue would need to be decided in a court hearing, which would require the parents' attorneys to contact the Onslow County department attorneys. The social worker subsequently reported to the juvenile court the department was not in agreement for the case to be transferred to North Carolina given the parents' minimal compliance with their case plan and failure to follow through with services they were connected to in North Carolina.

In October 2023, mother gave birth to a baby girl. Later that month she completed a court-ordered hair follicle drug test, which was positive for cocaine, benzoylecgonine, cocaine metabolite, marijuana and marijuana metabolite. A substance abuse specialist advised the social worker that the hair follicle tests usually go back 90 days and are accurate, and mother's test was high for benzoylecgonine and cocaine metabolite.

5.

Mother denied using anything expect marijuana and opined medication she was given at the hospital when she gave birth were the reason for the positive drug results. Mother was advised to provide the medication so the substance abuse specialist could review it, though she did not do so.

Throughout the reunification period, mother and Kevin visited the children virtually. The visits generally went well, with mother observed being affectionate with and playing with the children. Kevin also engaged with the children but was occasionally observed going out of frame. There were several reported instances of both parents making inappropriate comments, including giving the children false hope and promises of return to their care.

The court conducted a combined six-, 12-, and 18-month review hearing on January 5, 2024. The court found return of the children to the parents would cause a substantial risk of detriment to the children's well-being, terminated reunification services, and set a section 366.26 hearing.[3]

After the review hearing, the department discovered that in January 2024, the parents had a domestic violence incident in October 2023 in North Carolina, including yelling and things being thrown. Additionally, in March 2024, the parents had a domestic violence incident in Fresno, which resulted in an emergency protective order being granted, protecting mother from Kevin. Mother later sought to retract the protective order. Kevin ultimately pled nolo contendere to corporal injury on a spouse/cohabitant and was granted probation and a criminal protective order was issued.

The section 366.26 hearing was set for April 24, 2024. The department requested a 90-day continuance to further assess the children for a permanent plan. The children have had five placements throughout the case and had only been with their current care

---

[3] Mother filed a notice of intent to file a writ petition to review the setting order in case No. F087494. She did not file a petition, and the case was dismissed.

providers since January of that year; additionally, the department was working on trying to get them placed with a relative. The court granted the continuance.

The department subsequently filed an addendum section 366.26 report, dated July 8, 2024, recommending adoption as the children's permanent plan and that the parents' parental rights be terminated. The department reported that mother and Kevin had moved to Santa Cruz County, and in the report, the social worker detailed numerous calls from the county for domestic violence incidents, which resulted in father being cited for violating the criminal protective order, and child welfare referrals regarding J.G. and K.B.'s sister.

The social worker supervised an in-person visit between mother and the children in April 2024, where J.G. was excited to see mother and called her "mom." Mother played with the children and switched focus between them throughout the visit. The children were affectionate with mother but were excited to see their care provider at the end of the visit. Mother missed three consecutive visits in April and May, and did not visit again until June 2024. In two visits in June, the children were affectionate with mother and the family played together; the children ran to the care provider at the end of the visit. After one of the visits, K.B. told mother he wanted to go home with her.

The social worker assessed the relationship between the parents and the children. The social worker reported that visitation had been inconsistent throughout the reunification period and mother had only had two visits within the last 90 days. The social worker observed mother to be attentive to both children and opined she had a stronger relationship with J.G. than K.B. It was further reported that Kevin had not had any visits with the children within the last 90 days. During the most recent visit, J.G. expressed excitement to speak to Kevin and K.B. called him "dad" but appeared to lose interest in speaking with him. The social worker opined severing the relationship between the parents and the children would not outweigh the security, finality and sense of belonging that adoption would confer. It was reported the children were doing well in

7.

the care provider's home and the parents had not provided any evidence of change given the allegations of emotional abuse and general neglect regarding their daughter.

The children's care providers had had placement of the children since January 9, 2024, and had since then built a strong relationship with each child "evident by the boy[s'] reaction to seeing care providers after being away, calling them 'mom and dad,' and looking to them to provide comfort when sick or unwell." The care providers wished to adopt the children.

A contested section 366.26 hearing was conducted on September 4, 2024. The juvenile court accepted a letter attached to mother's statement of contested issues from Santa Cruz County Child Welfare Services, indicating that mother and Kevin's daughter had been determined to be safe in their care and a referral they had received had been closed.

Mother testified on her behalf. She testified she was J.G.'s primary caretaker until he was removed at about two years old. She described their relationship as "[a]mazing" and "[w]onderful" and felt his emotional attachment to her was "[v]ery good." She testified she would "do everything needed to keep him protected, happy and healthy," and that he would reach out to her when he was in distress. She stated K.B. was removed at five days old. Given his removal at such a young age, she was "shocked how bonded" they were. She testified he called her "mom," told her when he needed to use the restroom and went to her for comfort if J.G. got mad at him. K.B. had to be bribed with food or activities at the end of visits because he did not want to leave her and wanted to go with her.

Mother further testified her relationship with the children progressed through visitation. K.B. was hesitant at first but appeared to feel more comfortable after seeing her and J.G. interact. She also saw "[m]ajor" progression in the children's attachment and bonding with each other and felt their bond was greater than it had been prior to the beginning of reunification. Both children were excited to see her and were sad when

8.

visits ended.  The last time she visited the children was in July 2024.  She did not visit in August because she had car trouble and was sick.  Mother also said that the children have had two visits with mother's newborn daughter, and J.G. frequently asked to see her.

The department and minors' counsel requested the court order adoption as the children's permanent plan.  Mother requested the court find the beneficial parent-child relationship and sibling relationship exceptions to termination of parental rights applied.  Kevin argued the beneficial parent-child relationship exception applied.

In ruling, the court first found the sibling relationship exception did not apply.  The court noted that though the siblings had had two visits with their sister and the children asked about her, it could not find termination would be detrimental given the factors it was to consider under the exception.

As for the beneficial parent-child relationship exception, the court found that it did not apply as to Kevin because he did not maintain regular and consistent visitation.  As to mother, it found she maintained "minimally regular visitation."  The court also found that mother had "a relationship with each of" the children.  As for whether severing that relationship would be detrimental to the children, the court noted the children were "enjoying the longest and most obvious period of stability that they have ever had."  The court noted it was not considering the reasons for removal but could "consider the stability of the parents to the degree that it would affect the relationship with the children should the Court not terminate parental rights."  The court observed mother and Kevin demonstrated instability by way of their relationship with one another, missing visits, and generally "disappointing" the children.  The court went on, "it seems to this Court like [mother and Kevin's] instability has followed them for the last two years that I have been familiar with this case.  And there is a common denominator in that instability, whether it's domestic violence, … untreated mental health issues, or substance abuse."  The court concluded the children "would benefit from the permanency and stability that adoption will offer them."

9.

The court found by clear and convincing evidence the children were adoptable, ordered adoption as their permanent plan, and ordered parental rights terminated.

## DISCUSSION

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Mother's letter brief does not set forth a good cause showing arguable issues of reversible error exist. She makes numerous assertions of wrongdoing against the department, including that it (1) lodged "false accusations of instability" that were "unfounded and rooted in misinformation," as well as hearsay; (2) was inconsistent and confusing with regard to the visitation schedule, resulting in "missed opportunities" to maintain contact with the children; (3) failed to adequately coordinate transfer of the case to North Carolina, which caused delay to the case; and (4) provided "contradictory guidance" with regard to whether initiating divorce from Kevin would aid in reunifying with the children.

The issues at a section 366.26 hearing are limited to whether the children are adoptable and what permanent plan should be selected for the children. If the court determines the children are adoptable, it must terminate parental rights so that the children may be adopted unless the parent can show one of the exceptions to termination of parental rights applies. (*In re Caden C.* (2021) 11 Cal.5th 614, 630–631 (*Caden C.*).) The above assertions made by mother are not supported by specific citations to the record, and mother does not explain or support with legal authority how they relate to the limited issues before the court at the section 366.26 hearing or what bearing they have on the outcome of the hearing. As such, none of them set forth a good cause showing arguable issues of reversible error exist.

Mother also asserts that the children had a strong parental bond with she and Kevin. In support of this assertion, she contends she and Kevin have (1) "consistently demonstrated [their] commitment to [the children's] well-being, both emotionally and physically" and always prioritized the children's safety, education, and happiness; (2) the department made visitation difficult; (3) the children's removal was "based on baseless claims"; and (4) the children's "best interests would be served by" reunification.

To the extent that mother is arguing the court erred by declining to apply the beneficial parent-child relationship exception to termination of parental rights, she has failed to make an arguable claim of reversible error.

A parent seeking to establish that the beneficial parent-child relationship exception applies has the burden of proving by a preponderance of the evidence three elements to justify the application of the beneficial parent-child relationship exception: (1) "regular visitation and contact with the child, taking into account the extent of visitation permitted"; (2) "that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship"; and (3) "that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th 614 at pp. 632–633, 636–637.) The first two elements are reviewed for substantial evidence and the third for abuse of discretion. (*Id*. at pp. 639–641.)

Here, the juvenile court found that mother's visitation was sufficiently consistent and appeared to find that she had a beneficial relationship with the children but ultimately concluded that the children would not suffer detriment when compared with the stability and permanence of adoption. The latter determination, as we have stated above, is one we review for abuse of discretion. "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Caden C.*, *supra*, 11 Cal.5th at p. 641.) Mother has not explained how the court's determination was "arbitrary, capricious, or patently

absurd." To the extent mother is relying on the argument that the court relied on perceived inaccuracies in the department's report, mother contested the recommendation and testified on her behalf, and the court was entitled to find the department's report was more credible than mother's testimony to the extent they conflicted. As to any alleged inaccuracy not addressed by mother at the section 366.26 hearing, mother forfeited any challenge to the accuracy of the report by failing to make proper objections below. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 [a reviewing court generally will not consider a challenge to a ruling where an objection could have been made but was not].)

As for Kevin, the court found he had not maintained regular and consistent visitation with the children to justify declining to apply the exception as to him. In order to show reversible error, mother would have had to point to evidence on the record compelling the juvenile court to find regular and consistent visitation as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 ["where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law"].) She has not done so.

For these reasons, we conclude mother has not made a good cause showing that an arguable issue of reversible error exists. Accordingly, we dismiss the appeal.

## DISPOSITION

The appeal is dismissed.